**In re Elmer P. TALMADGE, Rachel A. Talmadge, Debtors.**

**Kelly Beaudin Stapleton, United States Trustee, Movant,**

v.

**Elmer P. Talmadge, Rachel A. Talmadge, Respondents.**

No. 5–06–bk–50001.

United States Bankruptcy Court, M.D. Pennsylvania.

June 28, 2007.

Brad Kurlancheek, Esq., Wilkes Barre, PA, for Debtors.

***OPINION***

JOHN J. THOMAS, Bankruptcy Judge.

The United States Trustee contends that the Chapter 7 filing of the Debtors is presumed abusive under the Bankruptcy Code, § 707(b)(2). The Debtors dispute that conclusion and suggest that the statutory language is being misinterpreted.

If I find that a consumer Chapter 7 debtor is abusing the provisions of Chapter 7, then I may dismiss the case. 11 U.S.C.A. § 707(b)(2). The relevant portion of § 707(b)(2) states:

(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or

(II) $10,000 [1].

(ii)(I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 of the Family Violence Prevention and Services Act, or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

There appears to be no dispute as to the Debtors' current monthly income. Disagreement arises as to "debtor's monthly expenses" as that term is utilized in 707(b)(2)(A)(ii)(I).

The first component of "debtor's monthly expenses" is the Debtors' "applicable monthly expense amounts specified under the National Standards and Local Standards." The National and Local standards are guidelines established by the Internal Revenue Service (IRS) to provide consistency in certain expense allowances in advancing tax collection. National Standards are described as allowances for food, clothing and other items, while Local Standards represent maximum allowances for housing and utilities and transportation. *http://www.irs.gov/individuals/article/0,, id=96543, 00.html.* These Standards are

---

**1.** Dollar amounts have since been adjusted upwards. (footnote ours)

98

known as "Collection Financial Standards."

> Collection Financial Standards are used to help determine a taxpayer's ability to pay a delinquent tax liability.
>
> Allowances for food, clothing and other items, known as the National Standards, apply nationwide except for Alaska and Hawaii, which have their own tables. Taxpayers are allowed the total National Standards amount for their family size and income level, without questioning amounts actually spent.
>
> Maximum allowances for housing and utilities and transportation, known as the Local Standards, vary by location. Unlike the National Standards, the taxpayer is allowed the amount actually spent or the standard, whichever is less.

*http://www.irs.gov/individuals/article/0,, id=96543, 00.html*

The specific dispute herein appears to be under the category of "Local Standards" dealing with the ownership of vehicles. [Allowable Living Expenses for Transportation] The IRS table in this regard, sets forth, simply:

| *Ownership Costs* | | |
| --- | --- | --- |
| | First Car | Second Car |
| National | $471 | $332 |

Separate from that is a table setting forth "Operating Costs & Public Transportation Costs."

The issue presented to me is whether the term "Ownership Costs" requires anything more than mere ownership or does it require the debtor to be subject to an installment lien payment.

The United States Trustee argues that the Debtors have improperly included "ownership expenses" for vehicles in their itemization of allowable living expenses. She maintains that ownership expenses should not be tallied unless there be a debt against the vehicle.

Philosophically, I don't know what Congress in the Bankruptcy Code, or the IRS, as a part of their National and Local Standards, should have done to streamline the operation of BAPCPA. I do know that Congress specifically referred to the applicable National and Local Standards of the IRS when creating the formula that they did. While the Local Standard ostensibly allows for a deduction arising from mere ownership of a vehicle, the commentary to the standard explains that the amount applicable is actual expense or the Local standard, whichever is less.

Perhaps, as evidence of the existence of an ambiguity is the significant split of cases on this very issue. In fact, one court has compiled a list of 14 bankruptcy cases allowing a deduction for a vehicle not financed, and 11 cases that have rejected that proposition.[2] This proportion has

---

2. "This Court counts eleven opinions holding that a debtor cannot deduct an ownership expense for a vehicle owned free and clear. *In re Hardacre*, [338 B.R. 718, 723 (Bankr. N.D.Tex.2006) ]; *In re McGuire*, 342 B.R. 608 (Bankr.W.D.Mo.2006); *In re Barraza*, 346 B.R. 724 (Bankr.N.D.Tex.2006); *In re Lara*, 347 B.R. 198 (Bankr.N.D.Tex.2006); *In re Carlin*, 348 B.R. 795, (Bankr.D.Or.2006); *In re Oliver*, 350 B.R. 294 (Bankr.W.D.Tex.2006); *In re Harris*, 353 B.R. 304 (Bankr.E.D.Okla. 2006); *In re Wiggs*, 2006 WL 2246432 (Bankr. N.D.Ill. August 4, 2006); *In re Devilliers*, 358 B.R. 849 (Bankr.E.D.La.2007); *In re Slusher*, 359 B.R. 290. (Bankr.D.Nev.2007); *In re Ceasar*, 364 B.R. 257 (Bankr.W.D.La.2007). Fourteen courts have gone the other way, holding that the debtor may deduct the ownership expense for a vehicle that is not financed or leased. *In re Demonica*, 345 B.R. 895 (Bankr.N.D.Ill.2006); *In re Fowler*, 349 B.R. 414 (Bankr.D.Del.2006); *In re Hartwick*, 352 B.R. 867 (Bankr.D.Minn.2006); *In re Grunert*, 353 B.R. 591 (Bankr.E.D.Wis.2006); *In re Haley*, 354 B.R. 340 (Bankr.D.N.H. 2006); *In re Wilson*, 356 B.R. 114 (Bankr. D.Del.2006); *In re McIvor*, 2006 WL 3949172

grown to 20 for the deduction[3] and 14 against.[4]

Similarly, commentators have expressed a difference of opinion on the proper interpretation of these provisions. See, Michael Louis Catreet, *Legislative Update: Means Testing and the Vehicle Ownership/Lease Expense Deduction: Allowance or Actual Expense?*, ABI Journal, Vol. XXVI, No. 5, p. 10, June 2007; Gary Neustadter, *2005: A Consumer Bankruptcy Odyssey*, 39 Creighton L.Rev. 225, 295 (2006); and Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr.L.J. 231, 257–58 (2005).

I have little to add to the commentary in these opinions and articles, many of which are articulate and well-reasoned. I merely note that a perceived ambiguity requires that we resort to legislative history. That ambiguity could very well arise in comprehending and applying the scope of the IRS "Local standard." Is the "Local standard" simply that which is written on the chart, or is it represented by the applicable table, as explained by relevant comment contained in the IRS Financial Analysis Handbook. The Financial Analysis Handbook (Handbook) is found at Part 5, Chapter 15, Section 1 of the Internal Revenue Manual (IRM) and is the source book for references to the terms National and Local Standards.

The Supreme Court has stated, "[w]here, as here, the resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear." *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). Of course, I resort to legislative history when confronted with "inescapable" ambiguity. *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395–396, 71 S.Ct. 745, 751, 95 L.Ed. 1035 (1951). Having said that, the best source of legislative history is the committee reports of Congress which "represen[ts] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation." *Garcia v. U.S.*, 469 U.S. 70, 76, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984), quoting *Zuber v. Allen*, 396 U.S. 168, 186, 90 S.Ct. 314, 324, 24 L.Ed.2d 345 (1969).

In discussing the mechanical application of the means test (presumption of abuse), the Senate Judiciary Committee stated:

> In addition to other specified expenses, the debtor's monthly expenses-exclusive of any payments for debts (unless otherwise permitted)—must be the applicable monthly amounts *set forth in the Internal Revenue Service Financial Analysis Handbook* [FN 62] as Necessary Expenses [FN 63] under the National [FN

---

(E.D.Mich. Nov. 15, 2006); [*In re*] *Naslund;* [359 B.R. 781, 789–90 (Bankr.D.Mont.2006) ]; *In re Prince*, 2006 WL 3501281 (Bankr. M.D.N.C. Nov.30, 2006); *In re Zak*, 361 B.R. 481 (Bankr.N.D.Ohio 2007); *In re Sawdy*, 362 B.R. 898 (Bankr.E.D.Wis.2007); *In re Crews*, [2007 WL 626041, *3 (Bankr.N.D.Ohio Feb.23, 2007) ]; *In re Enright*, 2007 WL 748432 (Bankr.M.D.N.C. Mar.6, 2007); *In re Watson*, 366 B.R. 523 (Bankr.D.Md.2007)."

*In re Swan*, 368 B.R. 12, 17–18 (Bkrtcy. N.D.Cal.2007).

**3.** *In re Armstrong*, 370 B.R. 323, 326–27, 2007 WL 1724955, *2 (Bkrtcy.E.D.Wash.,2007); *In re Ragle*, 2007 WL 1119632 (Bkrtcy. E.D.Ky.,2007); *In re Billie*, 367 B.R. 586 (Bkrtcy.N.D.Ohio,2007); *In re Lynch*, 368 B.R. 487 (Bankr.E.D.Va.2007); *In re Swan*, 368 B.R. 12, 18–19 (Bkrtcy.N.D.Cal.2007); *In re Zaporski*, 366 B.R. 758, 765–66 (Bkrtcy. E.D.Mich.2007).

**4.** *In re Ross–Tousey*, 368 B.R. 762, 764–65 (E.D.Wis.,2007); *In re Howell*, 366 B.R. 153, 155–56 (Bkrtcy.D.Kan.2007); *In re Skaggs*, 349 B.R. 594 (Bankr.E.D.Mo.,2006).

64] and Local Standards [FN 65] categories and the debtor's actual monthly expenditures for items categorized as Other Necessary Expenses. [FN 66]. Emphasis mine.

FN **62** Internal Revenue Service, Internal Revenue Manual–Financial Analysis Handbook pt. 5.15.1 (rev. May 1, 2004).

FN **63** The Internal Revenue Manual defines the term "necessary expenses" as expenses: that are necessary to provide for a taxpayer's and his or her family's health and welfare and/or production of income. The expenses must be reasonable. The total necessary expenses establish the minimum a taxpayer and family need to live. Id. at pt. 5.15.1.7.

FN **64** The Internal Revenue Manual's "National Standards" establish standards for five types of expenses: food (includes all meals, home and away), housekeeping supplies (includes laundry and cleaning supplies; other household products such as cleaning and toilet tissue, paper towels and napkins; lawn and garden supplies; postage and stationary), apparel and services (includes shoes and clothing, laundry and dry cleaning, and shoe repair), personal care products and services (includes hair care products, haircuts, oral hygiene products, electric personal care appliances), and miscellaneous (a discretionary allowance of $100 for one person and $25 for each additional person in a taxpayer's family). Except for miscellaneous expenses, these expense Standards are derived from Bureau of Labor Statistics Consumer Expenditure Survey and are stratified by income and household size. Id. at pt. 5.15.1.8.

FN **65** "Local Standards," under the Internal Revenue Manual, establish expense standards for housing (e.g., mortgage or rent, property taxes, interest, parking, necessary maintenance and repair, homeowner's or renter's insurance, and homeowner dues and condominium fees) and transportation expenditures (e.g., vehicle insurance, vehicle payment, maintenance, fuel, state and Local registration, parking fees, tolls, driver's license fees, and public transportation). Utilities (e.g., gas, electricity, water, fuel, oil, bottled gas, wood and other fuels, trash and garbage collection, septic cleaning, and telephone) are included under the housing expense category. Housing standards are established for each county within a state. Transportation stan-

dards are determined on a regional basis. Id. at pt. 5.15.1.9.

FN **66** The Internal Revenue Manual does not establish monetary amounts with regard to necessary expenses that it characterizes as "Other Expenses." Rather, it provides a non-exclusive list of these expenses, that must otherwise satisfy the "necessary expense test," described in note 63 supra. The list includes expenditures for certain accounting and legal fees, child care, dependent care for an elderly or disabled person, health care, taxes, court-ordered payments, life insurance, involuntary deductions (e.g., union dues, uniforms, work shoes), charitable contributions, and certain education expenses. Id. at pt. 5.15.1.10.

H.R.Rep. No. 109–31(I), at 13–14 (2005) *reprinted in* 2005 U.S.C.C.A.N. 88.

The term "necessary expense" is defined by the Financial Analysis Handbook as made up of three components: National Standards, Local Standards, and Other Expenses. IRM 5.15.1.7.1. The statutory reference to terms such as "National Standards" and "Local Standards" is apparent reference to the Handbook, the meaning of which would be impossible without reference to the Handbook. This is the very Handbook referenced in the legislative committee report. I believe it is a fair deduction that, when Congress uses terms created by the IRS to accomplish a given purpose, it also adopts the definition and usage of that word, unless otherwise stated.

National and Local Standards are not defined in the Bankruptcy Code, but are discussed by the Internal Revenue Service in their Financial Analysis Handbook. This Handbook is the source book for standards adopted by Congress in calculating "allowable expenses." The Handbook describes National Standards as:

standards for reasonable amounts for five necessary expenses. Four of them come from the Bureau of Labor Statistics (BLS) Consumer Expenditure Survey: food, housekeeping supplies, ap-

parel and services, and personal care products and services. The fifth category, miscellaneous, is a discretionary amount established by the Service. It is $100 for one person and $25 for each additional person in the taxpayer's household. IRM 5.15.1.7

Local Standards are mentioned as:

[S]tandards for two necessary expenses: housing and transportation. Taxpayers will be allowed the Local standard or the amount actually paid, whichever is less.

A. Housing—Standards are established for each county within a state. When deciding if a deviation is appropriate, consider the cost of moving to a new residence; the increased cost of transportation to work and school that will result from moving to lower-cost housing and the tax consequences. The tax consequence is the difference between the benefit the taxpayer currently derives from the interest and property tax deductions on Schedule A to the benefit the taxpayer would derive without the same or adjusted expense.

B. Transportation—The transportation standards consist of nationwide figures for loan or lease payments referred to as ownership cost, and additional amounts for operating costs broken down by Census Region and Metropolitan Statistical Area. Operating costs were derived from BLS data. If a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense. *If a taxpayer has no car payment only the operating cost portion of the transportation standard is used to figure the allowable*

transportation expense. Under ownership costs, separate caps are provided for the first car and second car. If the taxpayer does not own a car a standard public transportation amount is allowed. Emphasis mine.

IRM 5.15.1.7

I conclude that these terms of art, National and Local Standards, have no meaning without reference to the Financial Analysis Handbook, which spawned the terms. Repeated reference in the Handbook to the need of the taxpayer to be subject to a car payment in order to add the "ownership cost" factor to transportation expense, is controlling in the case before me.

The Debtor argues, quite logically, otherwise. The arguments, while compelling, do not attack the alternative position as absurd [5], which leaves me no alternative but to embrace my conclusions. If Congressional intent were other than I have held, such arguments might carry the day. Unfortunately for the Debtor, that is not the case here.

An Order will follow.

### ORDER

For those reasons indicated in the Opinion filed this date, **IT IS HEREBY**

**ORDERED** that the Debtors are unable to include the ownership allowance for their vehicles and, therefore, a presumption of abuse arises under § 707. Accordingly, the Motion to Dismiss of the United States Trustee is granted, effective in 10 days so as to allow Debtors to convert

---

**5.** "If Congress has mistakenly disguised its actual intent by incorporating language pointing in a different direction, it is not up to us to rewrite the statute unless, perhaps, a literal reading produces a truly absurd result." See *Holy Trinity v. United States,* 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892); *Napotnik v. Equibank & Parkvale Savings Ass'n,* 679 F.2d 316, 321 (3d Cir.1982).

their case to one under Chapter 13 should they desire.