**In re Sandra Lee FAIR, Debtor–Appellant.**

**No. 10–C–1128.**

United States District Court, E.D. Wisconsin.

April 19, 2011.

---

Jared M. Nusbaum, Rollie R. Hanson, Law Office of Rollie R. Hanson SC, West Allis, WI, for Debtor–Appellant.

## DECISION AND ORDER

RUDOLPH T. RANDA, District Judge.

The issue in this bankruptcy appeal arises from a familiar scenario after the recent collapse of the housing market: whether a chapter 13 debtor can "strip-off" a wholly unsecured secondary or junior lien on the debtor's principal residence when the debtor is ineligible for discharge because of a prior chapter 7 discharge pursuant to 11 U.S.C. § 1328(f)(1) (no chapter 13 discharge if the debtor obtained a chapter 7 discharge within the past 4 years). The bankruptcy court (Hon. Pamela Pepper) said no, dismissing the

debtor's adversary proceeding against GMAC Mortgage, LLC, the secondary mortgage holder.

Judge Pepper's decision is part of a mounting split of authority among bankruptcy courts across the country. *In re Jarvis*, 390 B.R. 600 (Bankr.C.D.Ill.2008) (no strip-off pursuant to § 1328(f)); *In re Fenn*, 428 B.R. 494 (Bankr.N.D.Ill.2010) (same); *In re Gerardin*, 447 B.R. 342 (Bankr.S.D.Fla.2011) (same);[1] *In re Tran*, 431 B.R. 230 (Bankr.N.D.Cal. 2010)(§ 1328(f) does not preclude strip-off); *In re Hill*, 440 B.R. 176 (Bankr. S.D.Cal.2010) (same); *In re Casey*, 428 B.R. 519 (Bankr.S.D.Cal.2010) (same).[2] For the reasons that follow, the Court agrees with the latter group of decisions which hold that a wholly unsecured junior lien on the principal residence of a debtor can be stripped-off in chapter 13 despite the operation of § 1328(f)(1).

In October of 2004, the debtor-appellant purchased homestead real estate located at 3166 N. 50th Street, Milwaukee, Wisconsin. In February 2007, the debtor obtained a second mortgage on her home. Both mortgages are held by GMAC Mortgage. The fair market value of the property is $48,000.00. The balance on the first mortgage is $56,800.00; the balance on the second mortgage is $48,000.00. On March 29, 2010, the debtor received a chapter 7 discharge. The debtor filed for chapter 13 bankruptcy on April 29. In an adversary proceeding, the debtor asked the bankruptcy court to treat GMAC's second mortgage as an unsecured claim and to "strip-off" GMAC's secondary lien

rights on her property. GMAC filed a claim on the first mortgage, valuing its lien at $67,911.16. GMAC did not appear in the adversary proceeding, did not file a claim with respect to the second mortgage, and is not a party to this appeal.

Section 506(a) of the bankruptcy code deals with the situation, described above, when the lien amount exceeds the current value of the property:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C. § 506(a). This section separates an undersecured creditor's claim into two parts: a secured claim to the extent of the value of the collateral, and an unsecured claim for the balance of the claim. "The term 'strip off' is colloquially used when, there being no collateral for a mortgage, the entire lien is proposed to be avoided. The term 'strip down' is used when, there being insufficient collateral value for a mortgage, the lien is proposed to be reduced to the value of the collateral." *In re Mann*, 249 B.R. 831, 832 n. 1 (1st Cir. BAP 2000).

Section 506(d) provides that "[t]o the extent that a lien secures a claim against a debtor that is not an allowed secured claim, such a lien is void." In *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773,

---

**1.** See also *In re Mendoza*, No. 09–22395 HRT, 2010 WL 736834 (Bankr.D.Colo. Jan.21, 2010); *In re Blosser*, No. 07–28223–svk, 2009 WL 1064455 (Bankr.E.D.Wis. April 15, 2009); *In re Trujillo*, No. 6:10–bk–02615–ABB, 2010 WL 4669095 (Bankr.M.D.Fla. Nov.10, 2010); *In re Colbourne*, No. 06:10–bk–00983–ABB, 2010 WL 4485508 (Bankr.M.D.Fla. Nov.8, 2010).

**2.** See also *In re Frazier*, 448 B.R. 803 (Bankr. E.D.Cal.2011); *In re Grignon*, No. 10–34196–tmb13, 2010 WL 5067440 (Bankr.D.Or. Dec.7, 2010); *In re Davis*, No. 09–26768–WIL, 2011 WL 1237638 (Bankr.D.Md. March 30, 2011).

116 L.Ed.2d 903 (1992), the Supreme Court held that Section 506(d) only avoids a lien to the extent that the underlying claim was disallowed pursuant to Section 502 (Allowance of claims or interests). Therefore, lien stripping is not allowed in chapter 7. In light of *Dewsnup*, Section 506(d) is not the proper authority for lien stripping in chapter 13. *Hill*, 440 B.R. at 181 (citing 4 *Collier on Bankruptcy* ¶ 506.06[1][c] ); *Fenn*, 428 B.R. at 500; *Gerardin*, 447 B.R. at 346–47. Even so, lien stripping is "expressly and broadly permitted" in the context of rehabilitative bankruptcy proceedings under chapters 11, 12 and 13. *In re Bartee*, 212 F.3d 277, 291 n. 21 (5th Cir.2000).

■ In chapter 13, the debtor's plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims ..." § 1322(b)(2) (emphasis added). The Supreme Court interpreted § 1322(b)(2) to prohibit a homestead mortgage lien from being stripped down to the value of the collateral, reading the language "a claim secured only by a security interest in real property" as "referring to the lienholder's entire claim, including both the secured and the unsecured components of the claim." *Nobelman v. Am. Savings Bank*, 508 U.S. 324, 331, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). But this does not deal with the situation, presented by the case at bar, where the lien is completely unsecured—i.e., "a junior lien on a residence if the amount of a senior lien on a residence exceeds the value of the residence." *Tran*, 431 B.R. at 234. Courts are generally in agreement that the junior lien can be "stripped-off" under such circumstances in chapter 13. The "antimodi-

fication exception of Section 1322(b)(2) protects a creditor's rights in a mortgage lien only where the residence retains enough value ... so that the lien is at least partially secured under Section 506(a).... [A] wholly unsecured claim, as defined under Section 506(a), is not protected under the antimodification exception of Section 1322(b)(2)." *In re Pond*, 252 F.3d 122, 126 (2d Cir.2001); *see also Bartee, Mann, supra; In re Tanner*, 217 F.3d 1357 (11th Cir.2000);[3] *In re Zimmer*, 313 F.3d 1220 (9th Cir.2002); *In re Lane*, 280 F.3d 663 (6th Cir.2002); *In re McDonald*, 205 F.3d 606 (3d Cir.2000); *In re Griffey*, 335 B.R. 166 (10th Cir. BAP 2005); *In re King*, 290 B.R. 641 (Bankr.C.D.Ill.2003).

■ All of which brings us to § 1328(f)(1), and the more narrow issue presented by this appeal. Enacted as part of the Bankruptcy Abuse Prevention and Consumer Prevention Act of 2005, § 1328(f)(1) prevents the court from granting "a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor has received a discharge" in a "case filed under chapter 7, 11, or 12 of this title during the 4–year period preceding the date of the order for relief under this chapter." Courts refer to a chapter 13 case filed on the heels of a chapter 7 case as a "chapter 20" or a "no-discharge chapter 13" case. The debtor does not dispute that § 1328(f)(1) prevents her from obtaining a discharge under chapter 13. Rather, the debtor argues that her ability to strip-off GMAC's wholly unsecured junior lien does not depend upon her ability to obtain a discharge.

The lead case finding against chapter 20 lien stripping is *Jarvis*, which held that a "no-discharge Chapter 13 case may certainly be utilized to obtain the protections

---

**3.** The Eleventh Circuit subsequently questioned its holding in *Tanner*, but *Tanner* remains the law in that jurisdiction. *In re Dickerson*, 222 F.3d 924 (11th Cir.2000).

of the automatic stay for the purpose of proposing a plan to make payments on debts. A no-discharge Chapter 13 case may not, however, result in a permanent modification of a creditor's rights where such modification has traditionally only been achieved through a discharge and where such modification is not binding if a case is dismissed or converted." 390 B.R. at 605–06. In *Blosser*, Judge Kelley found that the reasoning in *Jarvis* is "compelling" because "allowing a debtor to file Chapter 7, discharge all dischargeable debts and then immediately file Chapter 13 to strip off a second mortgage lien would not be much different than simply avoiding the mortgage lien in the Chapter 7 itself." 2009 WL 1064455, at *1 (citing *Dewsnup*). Judge Pepper agreed with the results of these cases, but based her dismissal on somewhat different grounds, finding simply that lien stripping in chapter 20 should not be allowed because it would amount to a de facto discharge.

■ None of the cases which refuse to allow lien stripping in a no-discharge chapter 13 case acknowledge or confront the plain language of § 1328(f)(1), which simply prohibits "a *discharge* of all debts provided for in the plan." A bankruptcy discharge "extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Accordingly, a bankruptcy discharge "does not release a lien from the Debtor's property, and the lien may continue to be enforced against the debtor's property which is subject to that lien." *Frazier*, 448 B.R. at 809. When Congress amends the bankruptcy laws, it does not write "on a clean slate." *Dewsnup*, 502 U.S. at 419, 112 S.Ct. 773. The Court must presume that Congress understood the distinction between discharging *in personam* liability

and modifying the terms of an *in rem* lien when it enacted § 1328(f)(1). In other words, denying certain chapter 13 debtors the right to a discharge did nothing to change the fact that lien stripping is generally allowed under chapter 13. In many chapter 13 cases, "it is the ability to reorganize one's financial life and pay off debts, not the ability to receive a discharge, that is the debtor's 'holy grail.' " *In re Bateman*, 515 F.3d 272, 283 (4th Cir.2008). Congress did not intend to prevent lien stripping through § 1328(f)(1), and it is inaccurate to characterize lien stripping as a de facto discharge under the bankruptcy code.

■ Many of the cases which refuse to allow lien stripping in the absence of a discharge focus on § 1325(a)(5), but this section does not apply to unsecured claims. *Jarvis* at 605. One court held that a claim valued as unsecured pursuant to § 506(a) should still be considered a secured claim for chapter 13 purposes because "the claim that exists after the Debtors' chapter 7 discharge is a secured claim." *Gerardin* at 346. The problem with this analysis is that it underestimates the importance of § 506(a) in chapter 13. *Zimmer*, 313 F.3d at 1227 ("emphasis on the valuation process" of § 506(a) is "compelled by *Nobelman* and the statutory scheme"). As noted above, lien stripping is allowed in chapter 13, and many of chapter 13's pre-discharge provisions expressly rely upon the distinction between secured and unsecured claims. § 1322(b)(2) (chapter 13 plan may modify the rights of holders of secured or unsecured claims); § 1325(a)(4) (value of property to be distributed on account of each allowed unsecured claim); § 1325(a)(5) (requirements for modification of allowed secured claims). Therefore, while the claims which survive chapter 7 could properly be characterized as "secured" claims,

that characterization is subject to change once a chapter 13 petition is filed. "If it is correct to 'look[ ] to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim,' then it stands to reason that valuation will control the determination of the mortgagee's security interest—i.e., whether it is a secured or unsecured claim." *Bartee*, 212 F.3d at 290. GMAC's junior mortgage lien is unsecured, and there is nothing in the bankruptcy code which ties the modification of an unsecured lien to obtaining a discharge under chapter 13. *Tran* at 235; *Hill* at 183.[4]

■ This is not to say that debtors enjoy an absolute right to strip off unsecured liens in a no-discharge chapter 13 case. Courts have an independent duty to determine whether chapter 13 proceedings are conducted in good faith. § 1325(a)(3), (7). Filing a chapter 13 case "solely for the purpose of the lien avoidance" suggests manipulation of the bankruptcy code and is evidence of bad faith. *Hill* at 184 (citing *Tran* at 238). The Court expresses no opinion on this issue, which should be explored by the bankruptcy court on remand. *In re Sidebottom*, 430 F.3d 893, 899 (7th Cir.2005) (listing factors for good faith inquiry).

**IT IS HEREBY ORDERED THAT** the National Association of Consumer Bankruptcy Attorneys' motion to file an *amicus curiae* brief [D. 4] is **GRANTED.**

**IT IS FURTHER ORDERED THAT** the decision of the bankruptcy court is **REVERSED,** and this matter is RE-MANDED for further proceedings consistent with this opinion.

---

4. Some courts also rely upon § 349(b)(1)(C), which provides that dismissal of a bankruptcy case reinstates "any lien voided under section 506(d)," *Jarvis* at 604; *Blosser*, the presumption being that since the debtor is ineligible for discharge, dismissal is the only other option. As noted above, lien stripping in chapter 13 does not depend upon the operation of Section 506(d).